**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**NEWMAN DIVISION**

| | | |
|---|---|---|
| ENCORE WIRE CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:10-cv-86-BMGL |
| | § | |
| SOUTHWIRE COMPANY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff Encore Wire Corporation's Motion to Prohibit Defendant from Pursuing Similar Claims in a Separate, Later-Filed Lawsuit [Docket Entry #15] and Defendant Southwire Company's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Docket Entry #16].  For the reasons stated below, Defendant's Motion is **DENIED** in part, Plaintiff's Motion is **GRANTED** in part, and the Court will decide remaining issues when it receives further briefing in accordance with the Court's instructions.

**Factual and Procedural Background**

This case involves two lawsuits: the suit now before this Court, in which Plaintiff Encore seeks a declaratory judgment regarding one of Defendant Southwire's patents, U.S. Patent No. 7,749,024 (the "'024 Patent"); and a patent infringement suit filed minutes later in the Eastern District of Texas, in which Southwire, there the plaintiff, alleges that Encore infringed the '024 Patent.

The '024 Patent was issued to Southwire on July 6, 2010.  Encore originally commenced this action on July 1, 2010, asserting claims for false advertising under 15 U.S.C. § 1125, and

cancellation of Southwire's "NO-LUBE" trademark under 15 U.S.C. § 1119.  At 12:07 a.m. Eastern Daylight Time ("EDT") on July 6, 2010, Encore filed its Amended Complaint, which for the first time contained claims for declaratory judgment of non-infringement and invalidity of the '024 Patent.  At 1:10 a.m. EDT/12:10 a.m. Central Daylight Time ("CDT"), Southwire filed suit against Encore in the Eastern District of Texas, alleging infringement of the '024 Patent.

Before the Court are two motions, one filed by each party.  Encore argues in its Motion that the declaratory judgment claims in its Amended Complaint make this the "first-filed" case regarding the '024 Patent and, therefore, that the Court should enjoin Southwire from pursuing its infringement suit in the Eastern District of Texas.  Conversely, Southwire argues, both in response to Encore's Motion and in its Motion to Dismiss, that Encore filed its Amended Complaint before the '024 Patent was issued and that the Court thus lacks subject matter jurisdiction over Encore's declaratory judgment claims.  In support of this contention, Southwire offers the declaration of one of its attorneys, Jason W. Cook.  The declaration states that on July 5 and 6, 2010, Mr. Cook monitored two websites maintained by the PTO to determine when the '024 Patent would issue.  According to Mr. Cook, at 12:15 a.m. EDT on July 6, both pages indicated that the '024 Patent had not issued yet.  Mr. Cook's declaration further states that after 12:15, but before 12:30, one of the websites, the "PAIR page,"[1] indicated that the '024 Patent had issued.  Accordingly, Southwire argues that the '024 Patent did not issue until after 12:15 EDT, which is after Encore filed its Amended Complaint.

Alternatively, Southwire argues that even if Encore filed its Amended Complaint after the '024 Patent issued, the Eastern District of Texas is the more appropriate forum for the parties' dispute, and the Court should therefore depart from the "first-to-file rule," which generally favors the action filed first in time when parties file competing lawsuits in different

---

[1] http://portal.uspto.gov/external/portal/pair.

forums.

Therefore, the motions and related briefing currently before the Court present two issues: 1) whether the Court has subject matter jurisdiction over Encore's declaratory judgment claims; and 2) if so, whether the Court should exercise its discretion to assert jurisdiction over those claims or dismiss them in favor of the infringement suit pending in the Eastern District of Texas.

## Discussion

The Court first addresses whether it has subject matter jurisdiction over Encore's declaratory judgment claims.  Southwire argues that Encore's claims do not present a justiciable case or controversy because the '024 Patent had not issued at the time Encore filed its Amended Complaint.  In order to present a justiciable case and controversy, a complaint seeking a declaratory judgment related to a patent's enforceability or validity must be filed after the patent has been issued.  *GAF Bldg. Materials Corp. v. Elk Corp. of Dall.*, 90 F.3d 479, 482 (Fed. Cir. 1996).  Neither party disputes this well-settled principle of law.  Rather, the parties' dispute revolves around the question of when a patent issues.  Encore contends that patents are not issued at a particular time, but only on a particular day.  Therefore, Encore argues that a patent effectively is issued at 12:00 a.m. Eastern Time on the issue date, and that any complaint filed at midnight or after on that day presents a justiciable case or controversy as to the patent.  Conversely, Southwire urges that patents *are* issued at a particular time and the Court thus lacks subject matter jurisdiction over any action filed before that time, even on the date of issue.

Neither party has presented the Court with legal authority addressing this precise question, and the Court is aware of none.  Several courts have exercised jurisdiction over suits filed in the first minutes of a patent's issue date.  *See, e.g.*, *D2L, LTD. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 779 n.14 (D. Md. 2009); *Hertz Corp. v. Enterprise Rent-a-Car Co.*, 557 F. Supp.

2d 185, 188 n.2 (D. Mass. 2008); *Abbot Labs. v. Johnson & Johnson, Inc.*, 524 F. Supp. 2d 553, 556, 557–58 (D. Del. 2007). One court even stated in dicta that 12:01 a.m. was "the minute the . . . patent issued." *D2L*, 671 F. Supp. 2d at 779 n.14.[2] However, in none of the cases did the defendant contend that the patent, as a matter of fact, had not issued before the plaintiff filed a complaint. Thus these cases do not provide guidance for evaluating Southwire's contention that the '024 patent was issued after 12:15 a.m. EDT, eight minutes after Encore filed its Amended Complaint.

The language of 35 U.S.C. § 154, which Encore also relies on, is similarly inconclusive. That statute states that the rights granted in a patent "shall be for a term beginning on the date on which the patent issues." 35 U.S.C.A. § 154(a)(2) (West, Westlaw through 2002 legislation). Encore contends that this statute "makes it clear that the 'date' and not the 'time' controls when determining the term of a patent" and, therefore, patents issue immediately after midnight on the issue date because that is when a day begins. (Pl.'s Reply 4, ECF No. 21.) The Court, however, does not draw the same conclusion from the statute. Even if the statute could fairly be read to state that a patent's term begins at the first minute of the issue date, that would not support a conclusion that the patent itself was also issued at that minute; how the law measures the length of a patent's protection is not the same question as whether a patent was in existence at the time a complaint was filed.

Lacking any conclusive legal authority one way or the other, each party contends that the other's approach would be difficult to administer. Encore argues that "[u]nder Southwire's theory, the [PTO] website must display the patent before it is officially issued and active." (Pl.'s Resp. 7.) As Encore points out, this approach raises important questions about how one proves

---

[2] The Court notes that were it to accept Encore's position, 12:00, not 12:01, would actually be the minute the patent issued, as the sixty seconds immediately following the stroke of midnight is the first minute of a day.

issuance of a patent.  Unlike the electronic filing systems utilized by federal courts, neither the PTO websites nor the patent itself displays the time a patent was issued.  Without such concrete data, parties would have to rely on affidavits stating the time the PTO website first showed the patent had issued.  Thus, it seems that under Southwire's approach, the race to the courthouse would be preceded by a race to first observe a patent's issuance on the PTO website.

Southwire does not directly respond to this argument, but instead urges that Encore's approach comes with its own adverse public policy implications.  First, Southwire argues that Encore's approach would encourage forum shopping by allowing a declaratory judgment plaintiff to file suit at the stroke of midnight on a day it *thinks*, based on the issue notification,[3] a particular patent is going to issue.  If the patent does issue that day, the declaratory judgment plaintiff wins the race to the courthouse; if the patent does not issue, the plaintiff can simply withdraw the complaint, suffering limited repercussions, if any.  Even if this is so, a patent holder could also file an infringement suit at midnight on the expected issue date and, like the declaratory judgment plaintiff, suffer limited repercussions for withdrawing it if the patent does not issue.  Thus, the two approaches differ only as to which event triggers the starting of the race to the courthouse: the stroke of midnight, or the patent's appearance on the PTO website.

Second, Southwire argues that Encore's approach favors parties that wish to file in the Eastern Time Zone.  According to Southwire, if patents issue on a day only, rather than at a particular time, a party wishing to file a patent suit in the Central Time Zone must wait to file until midnight Central Time on the issue date—a full hour after those wishing to file in the Eastern Time Zone.  However, this situation is easily avoided if courts use "absolute time" to determine if a complaint is filed after a patent is issued, just as courts do when determining

---

[3] An issue notification is a document sent by the PTO to the patentee after all requirements for issuance have been met.  MPEP § 1309 (8th ed. Rev. 8, July 2010).  The issue notification informs the applicant of the patent number and the issue date.  *Id.*

which of two complaints is filed first.  *See Third Dimension Semiconductor, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 6:08-cv-200, 2008 WL 4179234, at *1 (E.D. Tex. Sept. 4, 2008) ("Courts use '"absolute time," (as opposed to "time zone" time) to determine which petition is filed first.'" (quoting *Mead Corp. v. Stuart Hall Co., Inc.*, 679 F. Supp. 1446, 1453 (S.D. Ohio 1987) (interpreting 5th Circuit case law))).  Thus, applying absolute time, if a patent does indeed issue at the first moment of the day in the Eastern Time Zone, a complaint filed just after 11:00 p.m. the previous day in the Central Time Zone is filed after the patent issues.

Considering the arguments presented by both parties, the Court is persuaded that Encore's approach is correct and holds that the '024 Patent was issued just after 12:00 a.m. EDT on July 6, 2010.  Thus, Encore's Amended Complaint was filed after the Patent issued, and the Court has subject matter jurisdiction over Encore's declaratory judgment claims.

Further, the Court finds that this action is the first-filed case regarding the parties' dispute over the '024 Patent.  Southwire argues that an earlier Eastern District of Texas case presents the first-filed action concerning the '024 Patent.  Specifically, Southwire argues that unfair competition counterclaims asserted in Encore's Amended Answer in that case concern the enforceability of the '024 Patent.  Even if that were so, the Amended Answer in that case was filed after the Amended Complaint in this case, and the Court sees no reason why the counterclaims therein would relate back to a date prior to its filing, for purposes of the first-to-file rule.

The Court's inquiry does not end there, however.  Even where a declaratory judgment suit presents a justiciable case or controversy, "there is no absolute right to a declaratory judgment, for the [declaratory judgment] statute specifically entrusts courts with discretion to hear declaratory suits or not depending on the circumstances."  *Serco Servs. Co., L.P. v. Kelley*

*Co., Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995).  This discretion is broad but not absolute.

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1385 (Fed. Cir. 2010).

Generally, when a district court must choose between accepting jurisdiction over a suit for a

declaration of patent rights or yielding to a later-filed infringement suit, "the first-filed action is

preferred."  *Serco*, 51 F.3d at 1039 (citations omitted).[4]  Southwire urges the Court to depart

from the first-to-file rule in this case for three reasons: 1) the competing suits were filed mere

hours apart; 2) the "substantive lawsuit" should be favored over the declaratory one; and 3)

allowing the first-filed suit to proceed would promote forum shopping.

That Encore's Amended Complaint was filed little more than an hour before Southwire

filed its infringement suit does not diminish the applicability of the first-to-file rule.  For the

first-to-file rule is "just as valid when . . . one suit precedes another by a day as [it is] where a

year intervenes between the suits."  *Genentech v. Eli Lilly Co.*, 998 F.2d 931, 938 (Fed. Cir.

1993), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995).  This

is equally true when only minutes, rather than days, separate the two suits.  *See Lab. Corp. Am.*

*Holdings v. Chiron Corp.*, 384 F.3d 1326, 1332 (Fed. Cir. 2004) (holding that the district court

did not abuse its discretion in rejecting the argument that suits filed hours apart should be treated

as if filed simultaneously).  Thus, the Court will not depart from the first-to-file rule in this case

merely because the two competing suits were filed within minutes of each other.

Similarly, the Court may not favor a later-filed infringement suit over a first-filed

declaratory one based only on a preference for the "substantive lawsuit."  Although some courts

have applied such a rule in non-patent cases, the Federal Circuit has expressly rejected its

---

[4] Although generally this Court applies Eleventh Circuit law to procedural questions, the Federal Circuit has held that "the question of whether to accept or decline jurisdiction in an action for a declaration of patent rights in view of a later-filed suit for patent infringement impacts [the Federal Circuit's] mandate to promote national uniformity in patent practice," and therefore, "it is an issue that falls within [the Federal Circuit's] exclusive subject matter jurisdiction."  *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347–48 (Fed. Cir. 2005).

application in patent cases, holding that "[t]he considerations affecting . . . dismissal in favor of another forum do not change simply because the first-filed action is a declaratory action." *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347–48 (Fed. Cir. 2005). Generally, "the first-filed action is preferred, even if it is declaratory, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise." *Serco*, 51 F.3d at 1039 (citations omitted). Although exceptions to the first-filed rule "are not rare," "[t]he decision not to hear a properly brought declaratory action must rest on sound reason that would make it unjust or inefficient to continue the first-filed action." *Id.* (citations omitted). Thus, Southwire's argument that Encore's declaratory claims should yield to the infringement suit merely because the latter is the "substantive suit" is without legal basis.

Southwire's final argument for departing from the first-to-file rule—that allowing this suit to proceed would promote forum shopping—also is by itself insufficient reason for the court to decline jurisdiction over Encore's declaratory claims. When ruling on the dismissal of a declaratory action, a district court may consider "whether a party intended to preempt another's infringement suit," but that is only one factor in the analysis. *Elecs. for Imaging*, 394 F.3d at 1347–48. Other factors a court may consider include "the convenience and availability of witnesses, the absence of jurisdiction over all necessary or desirable parties, and the possibility of consolidation with related litigation." *Id.* at 1348 (citations omitted). Furthermore, the Federal Circuit recently held that when competing declaratory judgment and infringement actions are filed almost simultaneously, the question of discretionary jurisdiction over the declaratory action is "basically the same as [that of] a transfer action under [28 U.S.C.] § 1404(a)." *Micron Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008).

Although it seems apparent that Encore filed its declaratory judgment claims in an effort

8

to preempt an infringement suit by Southwire, that alone is not sufficient reason to dismiss Encore's declaratory judgment claims.  In order to determine which suit should continue, the Court must determine which forum is more convenient by conducting an analysis similar to that for a § 1404 motion to transfer.  The briefing on Encore's Motion contains arguments from both parties on the relative convenience of each forum; however, neither party's arguments are complete, and neither party presents any affidavits or other evidence to support its factual contentions regarding party and witness convenience.

Without fully developed arguments, and evidence from which factual determinations can be made, the Court cannot properly conduct a § 1404-type analysis.  Therefore, the Court requires the parties to submit briefing and evidence on the relevant convenience factors on an expedited schedule, and **ORDERS** as follows: Within fourteen days after the date of this Opinion, Southwire will file a brief, with accompanying affidavits or evidence, presenting its position on which forum is more convenient.  Within fourteen days after Southwire files its brief, Encore may file a response presenting its position, with affidavits or evidence attached.  Within seven days after Encore files its response, Southwire may file a reply brief.  All briefs must comply with the local rules of the Northern District of Georgia.  Upon receiving the parties' briefing, the Court will decide whether it should in its discretion dismiss this case, and if it does not dismiss it, whether it should enjoin Encore from pursuing its infringement suit in the Eastern District of Texas.

### Conclusion

The Court concludes that Encore's declaratory judgment claims present a justiciable case or controversy because Encore filed its Amended Complaint after the '024 Patent issued. Further, the Court finds that this suit is the first-filed action concerning the '024 Patent.

Accordingly, Southwire's Motion is **DENIED** in part, and Encore's Motion is **GRANTED** in part.  However, the Court lacks sufficient evidence and argument to determine whether it should in its discretion dismiss Encore's claims, and thus, will decide those matters when further briefing is submitted in accordance with this Opinion.

**SO ORDERED**.

March 4, 2011.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS